IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GNH GROUP, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 19-1932-CFC |
| ) | |
| GUGGENHEIM HOLDINGS, L.L.C., ) | |
| PREMIER MOTORSPORTS ) | |
| PROPERTIES, LLC, CHRISTOPHER ) | |
| GUGGENHEIM, RUSSELL LEICHT JR., ) | |
| PARCELCAST, LLC, and ONE LIVE ) | |
| LOGISTICS, LLC, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

In this action filed by GNH Group, Inc. ("GNH" or "Plaintiff") against Guggenheim Holdings, L.L.C. ("Guggenheim Holdings") and Christopher Guggenheim ("Guggenheim" and collectively with Guggenheim Holdings, the "Guggenheim Defendants"), Premier Motorsports Properties, LLC ("Premier") and Russel Leicht, Jr. ("Leicht" and collectively with Premier, the "Leicht Defendants"), Parcelcast, LLC ("Parcelcast") and One Live Logistics, LLC ("One Live" and collectively with the other Defendants, "Defendants"), GNH alleges claims for breach of fiduciary duty, breach of contract, intentional interference with contract, conversion, accounting/inspection of corporate records and civil conspiracy to breach fiduciary duty. (D.I. 1) This Report and Recommendation addresses the following four motions ("the Motions"): (1) Parcelcast's Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) Or, Alternatively, Motion for a More Definite Statement Under Federal Rule of Civil Procedure 12(e) Or, Alternatively, Motion to Stay this Proceeding Pending Arbitration ("Parcelcast's Motion"), (D.I. 24); (2) the Leicht Defendants' Motion to Dismiss, filed pursuant to Rule 12(b)(6) ("Leicht Defendants' Motion to Dismiss"), (D.I. 27); (3) the Guggenheim Defendants' Motion to Compel Arbitration and For a Stay, Or, Alternative Motion to Dismiss, or Motion for

a More Definite Statement ("Guggenheim Defendants' Motion"), (D.I. 29); and (4) One Live's Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) Or, Alternatively, Motion to Stay this Proceeding Pending Arbitration ("One Live's Motion"), (D.I. 31).[1]  GNH opposes the Motions.

For the reasons set forth below, the Court:  (1) orders that Parcelcast's Motion be GRANTED with regard to its request to stay this proceeding pending arbitration and recommends that it be DENIED WITHOUT PREJUDICE TO RENEW with regard to its request for dismissal of Plaintiff's claims or, alternatively, that Plaintiff be required to amend its original Complaint with a more definite statement of Plaintiff's claims pursuant to Rule 12(e); (2) recommends that the Leicht Defendants' Motion to Dismiss be DENIED; (3) orders that Guggenheim Defendants' Motion be GRANTED with regard to its request to compel arbitration and for a stay and recommends that it be DENIED WITHOUT PREJUDICE TO RENEW with regard to its request for dismissal of Plaintiff's claims or, alternatively, that Plaintiff be required to amend its original Complaint with a more definite statement of Plaintiff's claims pursuant to Rule 12(e); and (4) orders that One Live's Motion be GRANTED with regard to its request to stay this proceeding pending arbitration and recommends that it be DENIED WITHOUT PREJUDICE TO RENEW with regard to its request for dismissal of Plaintiff's claims or,

---

[1]  A motion to compel arbitration and stay proceedings is not a dispositive motion. *See, e.g.*, *Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 133-34 (3d Cir. 2014); *Pop Test Cortisol, LLC v. Univ. of Chicago*, Civil Action No. 14-7174 (WJM), 2015 WL 5089519, at *1 n.1 (D.N.J. Aug. 27, 2015).  A decision on a motion to involuntarily dismiss an action or to dismiss an action for failure to state a claim is a dispositive ruling.  28 U.S.C. § 636(b)(1)(A)-(B).  Because the instant Motions implicate both non-dispositive *and* dispositive requests, the Court has titled this opinion a Report and Recommendation.

alternatively, that Plaintiff be required to amend its original Complaint with a more definite statement of Plaintiff's claims pursuant to Rule 12(e).

## I. BACKGROUND

### A. Factual Background

On February 21, 2019, GNH entered into a written agreement (the "Operating Agreement") with Premier, Guggenheim Holdings and non-party Aaron Terry ("Terry") to form an entity known as Panther Global Technologies LLC ("PGT"). (D.I. 1 at ¶ 12 & ex. A) GNH, Premier, Guggenheim Holdings and Terry each became 25% owners of PGT. (*Id.* at ¶ 12) PGT was formed to pursue logistics contracts with Native American tribal entities to assist them in the formation and running of such businesses. (*Id.* at ¶ 15)

Guggenheim and Leicht (together, the "Individual Defendants") were made Managers of PGT. (*Id.* at ¶¶ 5, 6) As to Guggenheim, he also alleged to: (1) control One Live; and (2) use Guggenheim Holdings, a shell entity that is alleged to be merely an extension of Guggenheim acting as a natural person, in order to engage in the activities set out in the Complaint. (*Id.* at ¶¶ 3, 8) As to Leicht, he is also alleged to: (1) be a principal in Premier; and (2) use Premier, a shell entity that is alleged to be merely an extension of Leicht acting as a natural person, in order to engage in the activities set out in the Complaint. (*Id.* at ¶¶ 4, 6) GNH asserts that the Individual Defendants, individually and through the use of Premier, Guggenheim Holdings, Parcelcast and One Live, have diverted PGT funds to themselves, when those funds were owed to GNH pursuant to the Operating Agreement, all in violation of their duties to the other members of PGT (including GNH). (*Id.* at ¶¶ 1, 9, 22, 33)

The Operating Agreement contains a binding arbitration provision (the "Arbitration Provision") which states as follows:

3

> ***Binding Arbitration***.  Any controversy between the parties hereto involving any claim arising out of or relating to this Agreement, will be submitted to and be settled by final and binding arbitration in Delaware, in accordance with the then current Commercial Arbitration Rules of the American Arbitration Association [the "AAA Rules"], and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. . . . The parties (a) hereby irrevocably and unconditionally submit to the jurisdiction of the United States District Court for the District of Delaware for the purpose of enforcing any decision rendered by the AAA in accordance with this Section 11.4, (b) agree not to commence any suit, action or other proceeding arising out of or based upon this Agreement except to enforce a decision rendered by the AAA, and (c) hereby waive, and agree not to assert, by way of motion, as a defense, or otherwise, in any such suit, action or proceeding, any claim that it is not subject personally to the jurisdiction of the above-named courts, that its property is exempt or immune from attachment or execution, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit, action or proceeding is improper or that this Agreement or the subject matter hereof may not be enforced in or by such court.

(D.I. 1, ex. A at 14)  The Operating Agreement further provides that the laws of Delaware shall govern the construction of its terms and the application of its provisions.  (*Id.*)

### B.     Procedural Background

GNH filed its Complaint on October 11, 2019, (D.I. 1), and Defendants filed the instant Motions on December 2, 2019, (D.I. 24; D.I. 27; D.I. 29; D.I. 31).  The Motions were fully briefed as of December 23, 2019, (D.I. 40; D.I. 41; D.I. 42), and were referred to the Court for resolution by United States District Judge Colm F. Connolly on December 20, 2019, (D.I. 39).

## II.    STANDARD OF REVIEW

The Federal Arbitration Act ("FAA"), which governs the Arbitration Provision in question here, was enacted by Congress in 1925 to quell historical judicial hostility toward the enforcement of arbitration agreements.  *See, e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S.

4

105, 111-12 (2001); *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 177-78 (3d Cir. 2010). The United States Court of Appeals for the Third Circuit has "repeatedly recognized that the [FAA] establishes a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 200 (3d Cir. 2010) (quoting *Puleo*, 605 F.3d at 178).

Pursuant to Section 3 of the FAA, a court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3. Section 3, thus, "requires the court, on application of one of the parties [to the litigation], to stay the action if it involves an issue referable to arbitration under an agreement in writing." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009) (internal quotation marks and citation omitted); *see also Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004) ("[T]he statute clearly states, without exception, that whenever suit is brought on an arbitrable claim, the Court 'shall' upon application stay the litigation until [the] arbitration has been concluded.").

However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotation marks and citation omitted). Therefore, before referring a dispute to an arbitrator, a court must determine whether a valid arbitration agreement exists. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). If the answer to that inquiry is that the parties did enter into a valid arbitration agreement, the parties' disagreements may next present the question of who should decide whether a particular dispute is arbitrable (the court or the arbitrator); the answer there "turns

upon what the parties agreed about *that* matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (emphasis in original).

On that front, if there is "clear and unmistakable" evidence that the parties delegated threshold arbitrability questions to an arbitrator in their agreement, then all such issues, including whether the agreement covers a particular controversy, must be determined by the arbitrator. *Henry Schein, Inc.*, 139 S. Ct. at 529-30 (internal quotation marks and citation omitted); *see also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100 (3d Cir. 2020). The burden on a litigant seeking to prove that the parties intended to arbitrate arbitrability is an "onerous" one. *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 753 (3d Cir. 2016) (internal quotation marks and citation omitted). In analyzing whether the parties clearly and unmistakably agreed to arbitrate certain matters (including the threshold issue of arbitrability), courts should apply ordinary state-law principles that govern the formation of contracts. *First Options*, 514 U.S. at 944.

If the contract at issue is silent with respect to the issue of who primarily is to decide threshold questions regarding arbitration, then courts presume that the parties intended a court, not an arbitrator, to do so. *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014). In such a case, a court would then go on to determine whether the disputes at issue are within the scope of the agreement's arbitration clause. In so doing, the court applies general state law principles of contract interpretation to the interpretation of the arbitration agreement. *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 521-22 (3d Cir. 2019). That said, federal law may come into play in certain circumstances as part of this analysis, such as when: (1) the FAA's presumption in favor of arbitrability "provides the default rule" when no state law definitively determines whether a given claim is inside or outside the scope of an arbitration

6

agreement; or (2) when federal preemption issues arise. *Id.* (internal quotation marks and citation omitted).

## III.    DISCUSSION

There is no dispute here that the Operating Agreement contains a valid and enforceable Arbitration Provision. (*See, e.g.*, D.I. 1, ex. C at 4; D.I. 30 at 5) Pursuant to that provision, all Defendants contend that instead of this case proceeding forward now in this Court, GNH should first submit its claims against them to arbitration. (D.I. 40 at 3; D.I. 41 at 3-4; D.I. 42 at 1-2) In deciding whether and how Defendants' arguments are correct, the Court was required to engage in a multi-step analysis, which is set out below.

First, the Court addresses Plaintiff's claims against Guggenheim Holdings and Premier— the two Defendants who are signatories to the Operating Agreement that contains the Arbitration Provision. There is no dispute between Plaintiff and these two Defendants that these claims are subject to the Arbitration Provision and thus must be arbitrated. (*See* D.I. 35 at 1-2; D.I. 40 at 2)

However, the parties do dispute what should happen regarding Plaintiff's claims against the other four Defendants in this lawsuit, none of whom were signatories to the Operating Agreement (the "Non-Signatory Defendants"). Plaintiff's first preference is that these claims should proceed forward in this Court (and that after this litigation is over, only *then* should its other claims against Premier and Guggenheim Holdings go to arbitration). (D.I. 37 at 1-2, 9) The Non-Signatory Defendants, for their part, assert that the very issue of arbitrability (i.e., the question of what claims should be arbitrated) should be decided by an arbitrator and not by the Court. (*See* D.I. 40 at 2-4; D.I. 41 at 2-4; D.I. 42 at 8-9) Accordingly, the Court must now determine who is to decide the gateway issue of arbitrability as to these claims against the Non-Signatory Defendants: the Court or an arbitrator?

To answer this question, as was noted above, the Court must assess whether there is "clear and unmistakable" evidence that these parties delegated the resolution of threshold arbitrability issues to an arbitrator. *Richardson*, 811 F. App'x at 103. In making this determination, the Court is guided by federal law, since the "clear and unmistakable evidence" standard is a principle of federal law, not state law. *See, e.g.*, *First Options*, 514 U.S. at 944; *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1431 n.4 (2019) (Kagan, J., dissenting) ("In its many decades of FAA caselaw, the Court has preempted state law in just one other, 'narrow' circumstance: Whatever state law might say, courts must find 'clear and unmistakable evidence' before deciding that an agreement authorizes an arbitrator to decide a so-called 'question of arbitrability.'") (internal quotation marks and citations omitted).[2]

The Court, guided by federal caselaw, cannot conclude that there is clear and unmistakable evidence that *these* parties (Plaintiff on the one hand, and the Non-Signatory Defendants on the other hand) agreed that an arbitrator should decide arbitrability with respect to Plaintiff's claims against them.[3] How could there be such evidence when Plaintiff and the Non-

---

[2] *See also Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846-47 (6th Cir. 2020) (rejecting defendant's argument that the question of whether there is "'clear and unmistakable'" evidence that the parties agreed to arbitrate "'arbitrability'" presents a question of state law, and explaining that decisions holding otherwise "seem to conflate the questions of contract formation and interpretation (which generally involve state law) with the question [of] whether a particular agreement satisfies the 'clear and unmistakable' standard (which seems to be one of federal law)") (internal citations omitted); *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 552 & n.4 (5th Cir. 2018) (same); *Preferred Sands of Genoa, LLC v. Outotec (USA) Inc.*, C.A. No. 6011-VCN, 2011 WL 3444571, at *2 (Del. Ch. July 29, 2011) ("Under federal law, '[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'") (quoting *First Options*, 514 U.S. at 944-45).

[3] Were the Court required to make this determination with respect to claims brought by Plaintiff *against the two Defendant signatories* to the Arbitration Provision, it would reach a different conclusion, since the Arbitration Provision (which is contained in an agreement executed by Plaintiff and these two Defendant signatories) clearly and unmistakably delegates

8

Signatory Defendants have not signed an agreement with each other containing an arbitration provision with respect to any such claims?  (*See, e.g.*, D.I. 37 at 8-9); *see also, e.g.*, *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126-28 (9th Cir. 2013) (concluding that "the arbitration agreements do not contain clear and unmistakable evidence that Plaintiffs and Toyota [a non-signatory] agreed to arbitrate arbitrability" where those parties "did not agree to arbitrate arbitrability; Plaintiffs only agreed to arbitrate arbitrability . . . with the Dealerships because the arbitration clause is limited to claims between 'you and us'—i.e. Plaintiffs and the Dealerships"); *Sicily by Car S.p.A. v. Hertz Global Holdings, Inc.*, Civil Action No. 14-6113 (SRC), 2015 WL 2403129, at *2 (D.N.J. May 20, 2015) (concluding that defendant Hertz, a non-signatory to the contract containing an arbitration provision, did not come forward with "clear and unmistakable" evidence that it and the plaintiff agreed to arbitrate arbitrability, because there was "no agreement between Hertz and [the plaintiff] at all, much less a clear and unmistakable agreement

---

the issue of arbitrability to the arbitrator.  For one thing, as even Plaintiff acknowledges, (D.I. 37 at 9), the language of the provision is broad in requiring "*[a]ny controversy* between the parties hereto involving any claim arising out of or relating to" the Operating Agreement will be submitted to arbitration, (D.I. 1, ex. A at 14 (emphasis added); *see also* D.I. 28 at 17).  Moreover, the Arbitration Provision states that any claims shall be settled by arbitration "in accordance with" the then-current AAA Rules, (D.I. 1, ex. A at 14; *see also* D.I. 28 at 17), which provide that the arbitrator "'shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or the arbitrability of any claim or counterclaim[,]'" (D.I. 28 at 17 n.4 (quoting *id.*, ex. 1 at 13)). Indeed, the Third Circuit has concluded that where an arbitration provision provides for arbitration of a wide array of potential claims and incorporates AAA Rules giving the arbitrator the power to decide issues of arbitrability, this constitutes clear and unmistakable evidence that the parties intended the arbitrator decide those issues. *See Richardson*, 811 F. App'x at 103 (finding that the arbitration provision at issue "[c]learly and unmistakably" demonstrated that the two parties to that agreement had agreed to delegate arbitrability to the arbitrator, where the agreement provided that (1) "all controversies, disputes or claims" between the parties "shall be submitted promptly for arbitration" and (2) such arbitration shall be subject to the "then current" AAA rules, and (3) the rest of the contract was not ambiguous or unclear on this issue) (internal quotation marks and citations omitted).  Delaware courts have reached the same conclusion. *See McLaughlin v. McCann*, 942 A.2d 616, 625-26 (Del. Ch. 2008).

9

to submit the question of arbitrability to an arbitrator"); *Oehme, van Sweden & Assocs., Inc. v. Maypaul Trading & Servs. Ltd.*, 902 F. Supp. 2d 87, 96-97 (D.D.C. 2012) (concluding that it was for the Court (not the arbitrator) to decide whether a non-signatory was bound to arbitrate under an arbitration agreement because since the non-signatory did not sign any agreement containing an arbitration provision, she could not be said to have clearly and unmistakably agreed to arbitrate arbitrability); *In re Paragon Offshore PLC*, 588 B.R. 735, 753 & n.90 (Bankr. D. Del. 2018) (explaining that courts must consider whether the "parties" at issue fall within the scope of the language that delegates questions of arbitrability to an arbitrator; if this is unclear, the Court must review whether the parties are subject to arbitration under traditional principles of state contract law). To the contrary, on this score Plaintiff and the Non-Signatory Defendants have not previously agreed to anything.[4]

---

[4] The Court acknowledges that some Delaware state court cases, including *McLaughlin v. McCann*, 942 A.2d 616 (Del. Ch. 2008), hold that: (1) once a determination is made that an arbitration provision clearly and unmistakably delegated questions of arbitrability to an arbitrator, at least with regard to claims brought by a signatory against another signatory to an agreement containing such a provision; (2) and then a non-signatory who is also part of the suit seeks to have the arbitrator decide questions of arbitrability as to claims against *it*; (3) so long as that non-signatory can make any non-frivolous argument that it is subject to the arbitration agreement, the dispute against it will proceed to arbitration. 942 A.2d at 626-27 ("[A] signatory to an agreement vesting questions of substantive arbitrability to the arbitrator must resolve disputes about arbitrability against a non-signatory before the arbitrator" absent a "clear showing that the party desiring arbitration has essentially no nonfrivolous argument about substantive arbitrability to make before the arbitrator[.]"); *see also, e.g.*, *CVD Equipment Corp. v. Dev. Specialists, Inc.*, Civil Action No. 11062-VCG, 2015 WL 4506052, at *2-4 & n.8 (Del. Ch. July 23, 2015); *Carder v. Carl M. Freeman Cmtys., LLC*, Civil Action No. 3319-VCP, 2009 WL 106510, at *7 (Del. Ch. Jan. 5, 2009). But the Court does not understand how following such a rule would be consistent with making a finding that there is "clear and unmistakable evidence" that the signatory and non-signatory agreed to arbitrate arbitrability. Indeed, the *McLaughlin* Court's "any non-frivolous argument" test sounds like almost the opposite of the "clear and unmistakable" evidence test that federal law compels here.

Next, having concluded that the Court (not an arbitrator) must determine whether Plaintiff's claims against the Non-Signatory Defendants should be compelled to arbitration, the Court takes up this analysis. In doing so, as noted above, it utilizes state contract law principles to guide its decision. As to this inquiry, the parties also have different views about what the Court should do.

Plaintiff takes two alternative positions. Its primary position is that the Arbitration Provision does not cover the conduct of the Non-Signatory Defendants—and that it therefore has the right to have its claims against the Non-Signatory Defendants adjudicated by the Court. (D.I. 37 at 9-10) Alternatively, however, Plaintiff asserts that if the Court compels arbitration in some fashion, it should compel *all Defendants* (including all of the Non-Signatory Defendants) to "arbitrate this entire dispute pursuant to the [Arbitration Provision in the Operating Agreement]." (D.I. 35 at 1-2, 8-9, 11)

The Non-Signatory Defendants have their own views. Mr. Guggenheim asserted in his opening brief (filed jointly with Guggenheim Holdings) that Plaintiff's claims here fall within the scope of the Arbitration Agreement and should "be submitted for resolution to binding arbitration[.]" (D.I. 30 at 3-6)[5] Parcelcast and One Live simply took the position that the issue of arbitrability should be submitted to an arbitrator (without ever offering a view on whether Plaintiff's claims against them definitely fall within the scope of the Arbitration Provision). (D.I.

---

[5] Mr. Guggenheim changed course in his reply brief (filed jointly with Guggenheim Holdings and Parcelcast), asserting that the Court should order Plaintiff to submit its claims to arbitration, including for a decision by the arbitrator as to which parties are subject to arbitration and which claims should be arbitrated. (D.I. 40 at 3-4) However, it is not appropriate for a party to save for its reply brief a new argument, one that it did not offer in its opening brief (and which is in conflict with the position it offered in its opening brief). For that reason, the Court declines to consider Mr. Guggenheim's changed view in his reply brief.

40 at 3-4; D.I. 41 at 3-4) And the Leicht Defendants (which include signatory Premier and non-signatory Mr. Leicht) note that they "are willing to agree to binding arbitration of the Plaintiff's claims" against them. (D.I. 42 at 10)

With the above in mind, the Court turns to Plaintiff's claims against Mr. Leicht and Mr. Guggenheim. As noted above, those two Individual Defendants have agreed to submit such claims to arbitration. And as for Plaintiff, it would be equitably estopped from refusing to have such claims submitted to arbitration, pursuant to Delaware contract law. (*See id.* at 2-4) As Plaintiff itself admits, "Delaware allows a *nonsignatory* to a contract to compel a *signatory* to arbitrate under an equitable estoppel theory." (D.I. 37 at 11-12 (emphasis added)) This theory, as articulated in cases like *Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, No. Civ.A2037-N, 2006 WL 2473665 (D. Del. Aug. 22, 2006), applies in two circumstances:

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

2006 WL 2473665, at *5 (emphasis omitted). At least the second circumstance referenced in *Wilcox & Fetzer* applies here. (D.I. 42 at 3-4) Indeed, Plaintiff itself has conceded that it does, acknowledging that its allegations against both the Non-Signatory Defendants and against signatory Defendants Guggenheim Holdings and Premier all set forth facts of "'substantially

12

interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.'" (D.I. 37 at 12; *see also* D.I. 42 at 2-4) So these claims should proceed to arbitration too.

That leaves Plaintiff's claims against Parcelcast and One Live. Those two entities have not agreed that the claims against them should be resolved by binding arbitration. Thus, the Court must consider whether, pursuant to Delaware contract law, there is a basis on which such claims nevertheless must be arbitrated (even though these Defendants did not sign the Operating Agreement).

The one argument that Plaintiff puts forward in its briefing as to why the Court should compel arbitration of all of its claims, including those against Parcelcast and One Live, is that these Non-Signatory Defendants are *themselves* equitably estopped from opposing compelled arbitration. (D.I. 37 at 11-12) Plaintiff argues that since all Defendants have an "intertwined" connection to the facts of this suit, and since its allegations (as noted above) relate to substantially interdependent and concerted misconduct by signatories and non-signatories to the Operating Agreement, then the Court can compel arbitration of all of Plaintiff's disputes under an equitable estoppel rationale. (*Id.* (citing *Wilcox & Fetzer*, 2006 WL 2473665, at *5)) But the Court is not persuaded that the equitable estoppel doctrine would work in *Plaintiff's* favor here. The theory of equitable estoppel can operate to compel "a *signatory* to arbitrate with a nonsignatory" under the circumstances described in *Wilcox & Fetzer*. 2006 WL 2473665, at *4 (emphasis added); *see also, e.g.*, *Douzinas v. Am. Bureau of Shipping, Inc.*, 888 A.2d 1146, 1153 (Del. Ch. 2006) ("Under abundant authority, non-signatories are permitted to compel signatories to arbitrate disputes under a theory of equitable estoppel."). But as to these claims, Plaintiff would be attempting to do the reverse—i.e., attempting to compel a *non-signatory* to arbitrate

with a signatory. Plaintiff has not cited any case law which supports such an application of the equitable estoppel doctrine described in *Wilcox & Fetzer* to such circumstances. (*See* D.I. 37 at 11-12); *cf. Kuroda v. SPJS Holdings, L.L.C.*, Civil Action No. 4030-CC, 2010 WL 4880659, at *3 (Del. Ch. Nov. 30, 2010) (rejecting application of the equitable estoppel rationale under the circumstances at issue in that case, because unlike the situation in *Wilcox & Fetzer*, the instant case was "not a case compelling a signatory to arbitrate with a nonsignatory").

Plaintiff might have been able to make other legal arguments as to why non-signatories Parcelcast and One Live should be forced to arbitrate Plaintiff's claims against them (such as, for example, incorporation by reference, assumption, agency, veil piercing/alter ego, third-party beneficiary and other types of estoppel-related theories). *See Kuroda*, 2010 WL 4880659, at *3. But Plaintiff did not actually do so in its briefing. Therefore, the Court has no basis to conclude that Plaintiff's claims against Parcelcast and One Live should be arbitrated.

Therefore, the final issue for the Court is what to do with the case procedurally at this point (including as to the claims against Parcelcast and One Live, which are not subject to arbitration). While the Leicht Defendants contend that the action should be dismissed in favor of arbitration, the other Defendants assert that this action should be stayed pending arbitration. (D.I. 28 at 18; D.I. 30 at 1, 11; D.I. 40 at 4; D.I. 41 at 4) And for its part, Plaintiff argues that if the Court compels arbitration, it should stay this action pending arbitration instead of dismissing it. (D.I. 37 at 8)

The Court agrees that a stay of the claims pending arbitration (not dismissal) is the proper course here. *See* 9 U.S.C. § 3; *Lloyd*, 369 F.3d at 268-69; *Katz v. Rittenhouse Org., Inc.*, C.A. No. 19-546 (MN), 2020 WL 374712, at *2 (D. Del. Jan. 23, 2020). And it agrees that the entire case (including as to claims against Parcelcast and One Live) should be stayed, since permitting

those claims to proceed forward while arbitration is ongoing as to the other parties would likely hinder those other parties from obtaining a prompt, equitable resolution of their claims before an arbitrator. *See Neal v. Asta Funding, Inc.*, Civ. No. 13-3438 (KM)(MAH), 2014 WL 131770, at *4 (D.N.J. Jan. 6, 2014) (staying the entire case pending arbitration of some of the plaintiff's claims in a complaint, where "[t]he substantive issues that either are being decided or are subject to being decided in arbitration are intertwined with the claims asserted in the Complaint, and may affect their resolution"); *Capers v. Quest Capital Strategies, Inc.*, Civil Action No. 06-5780(SDW), 2007 WL 2033831, at *4 (D.N.J. July 10, 2007) ("Courts typically grant stays when there are both arbitrable and non-arbitrable claims in the same action and significant overlap exists between the parties and the issues.").

## IV.    CONCLUSION

For the reasons set forth above, the Court orders that:  (1) arbitration is compelled as to Plaintiff's claims against all Defendants except Parcelcast and OneLive; and (2) the case is stayed in its entirety until the completion of the arbitration process.  Relatedly, the Court:  (1) orders that Parcelcast's Motion be GRANTED with regard to its request to stay this proceeding pending arbitration and recommends that it be DENIED WITHOUT PREJUDICE TO RENEW with regard to its request for dismissal of Plaintiff's claims or, alternatively, that Plaintiff be required to amend its original Complaint with a more definite statement of Plaintiff's claims pursuant to Rule 12(e); (2) recommends that the Leicht Defendants' Motion to Dismiss be DENIED; (3) orders that Guggenheim Defendants' Motion be GRANTED with regard to its request to compel arbitration and for a stay and recommends that it be DENIED WITHOUT PREJUDICE TO RENEW with regard to their request for dismissal of Plaintiff's claims or, alternatively, that Plaintiff be required to amend its original Complaint with a more definite

15

statement of Plaintiff's claims pursuant to Rule 12(e); and (4) orders that One Live's Motion be GRANTED with regard to its request to stay this proceeding pending arbitration and recommends that it be DENIED WITHOUT PREJUDICE TO RENEW with regard to its request for dismissal of Plaintiff's claims or, alternatively, that Plaintiff be required to amend its original Complaint with a more definite statement of Plaintiff's claims pursuant to Rule 12(e).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2).  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: July 27, 2020

                                                                  Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE